Golia, J.
(dissenting). The parties entered into a written equipment lease contract for the lease of an automatic teller machine (ATM) to be placed in the beauty salon owned and operated by defendant Colon. Ms. Colon entered into this contract as a business person who determined that the money to be generated by having the machine in her place of business would be greater than its operating costs. In other words, her business was going to make a profit from the machine. A desire to make a profit forms the predicate for most business decisions the world over, even for those business owners who are not native speakers of English.
Unfortunately, the machine did not generate a profit, alleg *120 edly because it was inoperable when delivered. In any event, a number of months later, the defendant beauty salon ceased making payments and the plaintiff leasing company commenced this action against the beauty salon and against Ms. Colon as a guarantor.
In defense of this claim, Ms. Colon raised four affirmative defenses asserting unclean hands, that the machine was never operational, fraud in the inducement, and equitable estoppel. Plaintiff set forth in its motion for summary judgment the various provisions of the leasing contract which effectively waived those affirmative defenses. Upon being served with that motion, defendant then claimed, for the first time, that because her English is “very limited,” she could not read the documents in question and did not know what she signed. She did not, however, set forth any facts to show that she made a reasonable effort to have the contract translated.
The majority, sua sponte, has recalled its prior decision but continues to argue that it is the unique facts of this case that mandate their holding.
There are, however, no unique facts in the case that I was able to ascertain from either the record or from my colleagues’ decision.
The majority tacitly acknowledges that the underlying contract is not per se unconscionable as to its terms and conditions inasmuch as the current decision does not state as much. Instead they address the concept of procedural unconscionability which is a remedy provided by statute for consumer finance leases (UCC 2-A-108 [2]), rather than for commercial finance leases. The majority then proceeds to assert that despite the clear language of the statute (UCC 2-A-108 [2]) there is an argument to be made that it could be applied to commercial matters.
Having made that assertion, they then make the unsupported finding that under the facts of this case there are triable questions of material fact. What facts were raised by the defendant to warrant such a finding remain a mystery to me.
Ms. Colon did not explain how she was lured into signing two contracts a number of weeks apart, nor did she address any specific claims of how she was misled other than asserting that English is not her native language. While the majority found that “defendant’s allegations of fact . . . raised triable questions . . . as to the propriety of the contract negotiation process . . .” I, however, am at a loss as to what “allegations of fact” *121 are referenced. There is nothing in Ms. Colon’s opposition papers reflecting a recitation of facts to support that finding.
The lower court was presumably moved by this argument and denied the motion for summary judgment. Indeed, my colleagues on this court are similarly moved by this specious argument and therefore vote to affirm. It is interesting to note that in an unrelated, but strikingly similar case (Preferred Capital, Inc. v Harvey B., Inc., 2 Misc 3d 131[A], 2004 NY Slip Op 50115[U] [2004], decided concurrently with the previous decision herein), the Appellate Term reversed the denial of plaintiffs summary judgment motion and directed that judgment be entered in favor of the plaintiff.
I, however, do not believe that Ms. Colon, who owns a hair salon business which requires licensing by the municipal government, purchased or leased the beauty parlor chairs, commercial hair dryers and other equipment, entered into a commercial lease for the business to operate, hired staff, pays payroll taxes, ordered beauty supplies and mixes complex chemicals, obtained insurance and entered into a myriad of other contracts and agreements that are ancillary to maintaining a business in the City of New York, was unaware of the commercial implications of the contract she signed.
The truth of the matter is that this is a commercial transaction entered into by an experienced store owner seeking to make a profit, and her subsequent claim that she should not be bound by the terms of the contract because she is not well-versed in the English language is unavailing.
In order to substantiate her claim that she was unable to understand the contract because she could not read or write English, Ms. Colon would have to assert that she could not find anyone available to her that is bilingual in Spanish and English in the New York City area. The absurdity of such claim has evaded no one but the majority, inasmuch as I did not find any assertion by the defendant that she had employed reasonable efforts to obtain a translator or anyone to assist her but was unable to do so.
The defendant relies in large part on the precept pronounced by the Court of Appeals in Pimpinello v Swift & Co. (253 NY 159, 163 [1930]) that “[i]f the signer is . . . ignorant of the alien language of the writing, and the contents thereof are misread or misrepresented to him by the other party . . . unless the signer be negligent, the writing is void.” Not only is said precept inapplicable to the facts herein, the defendant herself *122 was negligent in failing to have the document translated or read. Indeed, there is no allegation, much less proof, that the plaintiff or the vendor misrepresented the contents of the contract.
As aptly stated by the Appellate Division, Second Department, in Sofio v Hughes (162 AD2d 518, 520 [1990]):
“Persons who are blind or illiterate are not automatically excused from complying with the terms of the contracts which they sign simply because this disability might have prevented them from reading the contracts. The cases consistently hold that a person with such a disability must make a reasonable effort to have the document read to him.” (Emphasis added.)
The mere fact that English is not the defendant’s native language should neither stand as a disability nor as a defense.
Prior to signing the contract, Ms. Colon had several weeks’ time to have the contract read to her either in English, which she apparently understands to some degree, or translated into Spanish by a friend, or acquaintance or a translating service. It is inconceivable to me that Ms. Colon was unable to find anyone available to her in Queens County who is bilingual in Spanish and English. While the majority opinion acknowledges the rule enunciated in Sofio v Hughes (162 AD2d 518 [1990], supra-, see generally Kassab v Marco Shoes, 282 AD2d 316 [2001]; Shklovskiy v Khan, 273 AD2d 371, 372 [2000]; Kenol v Nelson, 181 AD2d 863, 866 [1992]), they fail to apply same. Moreover, the plaintiffs representative was never involved in the negotiating process. Ms. Colon only dealt with the representative of the vendor. Thus it cannot even be argued that plaintiff in any way “misread or misrepresented” the contents of the contract to her (cf. Pimpinello v Swift, 253 NY at 163).
Accordingly, I vote to reverse the order of the lower court and to grant the motion for summary judgment in favor of the plaintiff.
Pesce, PJ., and Rios, J., concur; Golia, J., dissents in a separate memorandum.